UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL MALONE and BARBARA MALONE,
husband and wife,

                     Plaintiffs,

              - against -

BAYERISCHE HYPO-UND VEREINS BANK, AG-
NEW YORK BRANCH; BAYERISCHE HYPO-UND
VERIENSBANK US FINANCE, f/k/a BAYERISCHE
HYPO-UND VEREINSBANK STRUCTURED
FINANCE, INC.; KATTEN MUCHIN ROSENMAN,
LLP, f/k/a ROSENMAN & COLIN, LLP; and DOES 1
through 50,

                     Defendants.

---

MICHAEL MALONE and BARBARA MALONE,
husband and wife,

                     Plaintiffs,

              - against -

ENTERPRISE FINANCIAL SERVICES
CORPORATION, f/k/a ENTERPRISE BANK, A
Missouri Corporation,

                     Defendant.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-4-10

**ECF CASE**

08 Civ. 7277 (PGG)

**OPINION AND ORDER**

**ECF CASE**

09 Civ. 3676 (PGG)

**OPINION AND ORDER**

---

PAUL G. GARDEPHE, U.S.D.J.:

        The two above-captioned cases arise from Plaintiffs Michael and Barbara

Malone's investment in the Coastal Trading Common Trust Fund Series III and IV, a tax shelter

that the Internal Revenue Service subsequently disallowed.

        The Malones filed suit against Defendants Bayerische Hypo-Und Vereins Bank,

AG-New York Branch; Bayerische Hypo-Und Vereins Bank US Finance f/k/a Bayerische Hypo-

Und Vereins Bank Structured Finance, Inc. (collectively, "HVB") and Defendant Katten, Muchin Rosenman, LLP, f/k/a/ Rosenman & Colin, LLP ("Katten") on August 15, 2008,[1] and filed an amended complaint on September 30, 2008 (the "HVB-Katten Complaint"). HVB has moved to dismiss under Fed. R. Civ. P. 8(a) and 9(b), and both HVB and Katten have moved to dismiss under Fed. R. Civ. P. 12(b)(6). The Malones have filed a cross-motion for leave to file a second amended complaint pursuant to Fed. R. Civ. P. 15(a).

The Malones' complaint against Defendant Enterprise Financial Services Corporation, f/k/a Enterprise Bank ("Enterprise") was filed on April 10, 2009 (the "Enterprise Complaint"). Enterprise has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).

For the reasons set forth below, the motions to dismiss filed by Defendants HVB, Katten and Enterprise will be GRANTED, and Plaintiffs' motion for leave to file a second amended complaint will be DENIED.

## BACKGROUND

In 2001, Plaintiff Michael Malone received income and capital gains from the sale of his company and subsequently sought "investment and tax planning advice" from his accounting firm, Clark Nuber. (HVB-Katten Compl. ¶¶ 14-15) Based on Clark Nuber's advice, Malone invested $1,700,000 in the Coastal Trading Common Trust Fund Series III and IV ("CTF"). (Enterprise Compl. ¶ 53; HVB-Katten Compl. ¶ 106)

CTF was a tax shelter vehicle in which investors pursued a strategy of purchasing foreign currency options in "economically offsetting gain and loss positions." See IRS Notice 2003-54 (Aug. 18, 2003). Plaintiffs allege that HVB agreed to provide a $15.6 million loan to non-party Braxton Management, Inc. which, in turn, would loan the funds to Malone, who would

---

[1] This matter was originally assigned to Judge Peter K. Leisure and was reassigned to this Court on October 14, 2009.

invest the funds in "a corporation wholly owned" by him.[2]  (HVB-Katten Compl. ¶¶106, 107 and

Ex. D)  These funds were used to finance the purchase of foreign currency options that generated

both losses and gains; the losses were allocated to investors such as Plaintiffs and the gains were

allocated to tax-indifferent trusts.[3]

       Plaintiffs claim that Defendants, "along with others, designed, promoted, and

implemented an illegal, fraudulent, and abusive investment scheme" in the form of the CTF

transaction.  (Id. ¶1; Enterprise Compl. ¶2)  HVB is alleged to have pledged the original loan that

would ultimately be transferred to Malone and, in turn, to have collected fees for originating that

loan.  See, e.g., HVB-Katten Compl. ¶ 49.  Malone claims that the HVB "loan was a sham." (Id.

¶¶17, 106, 107)  Katten is alleged to have "played a significant role in the design of CTF" and to

have produced an opinion letter regarding the propriety of the CTF transaction.  (Id. ¶¶51-53, 62;

see also HVB-Katten Proposed Second Amended Complaint ("SAC") Ex. J)  Katten's opinion

letter was also referenced in an opinion letter provided to Malone by Sidley Austin Brown &

Wood on March 8, 2002.  (HVB-Katten Compl. ¶¶54-56, Ex. C)  Enterprise is alleged to have

served as "the trustee of both the Coastal Trading Common Trust Fund and [as] the Trustee of an

irrevocable trust organized by Enterprise for the benefit of Malone."  (Enterprise Compl. ¶ 37)

       On August 18, 2003, the Internal Revenue Service issued Notice 2003-54, entitled

"Common Trust Fund Straddle Tax Shelter."  IRS Notice 2003-54 (Aug. 18, 2003); see also

HVB-Katten Compl. ¶ 34.  The IRS Notice stated that CTF was "being used by taxpayers for

the purpose of generating deductions" and announced that "the claimed tax benefits purportedly

---

[2]  Malone invested the funds in two entities controlled by him:  Belmar Investment Trust and
Belmar Trading, Inc.  See HVB-Katten Compl. ¶ X; Enterprise Compl. ¶ 10.
[3]  The scheme is described in more detail in Malone v. Clark Nuber, P.S., No. C07-2046 (RSL),
2008 WL 2545069, at *2 (W.D. Wash. June 23, 2008) and Williams v. Sidley Austin Brown &
Wood, L.L.P., 2006 NY Slip Op 50381U, 2-4 (N.Y. Sup. Ct. 2006).

generated by these transactions are not allowable for federal income tax purposes." IRS Notice

2003-54 (Aug. 18, 2003). The IRS identified the lack of economic substance as CTF's fatal

flaw:

> [t]he offsetting positions entered into by the CTF did not have any
> effect on the CTF's net economic position or non-tax objectives
> and did not serve any non-tax objectives of the CTF or afford it a
> reasonable prospect for profit. Therefore, the losses purportedly
> resulting from this transaction are not allowable.

IRS Notice 2003-54 (Aug. 18, 2003).

On December 22, 2003, Michael Schwartz, the President of Coastal Trading Fund

LLC, sent a letter to Michael Malone notifying him of the IRS Notice regarding Common Trust

Fund transactions and "stating that the IRS intended to challenge the tax benefits associated with

such transactions." (Poretz Decl. Ex. B) Schwartz told Malone that the IRS Notice "has led me

to conclude that the IRS will shortly begin an investigation of my company as well, ultimately

requiring me to provide them with a list of all clients that have entered into listed transactions.

Id. As such it is almost certain that you will [be] audited at some time in 2004." Id. Schwartz's

letter further stated that Malone should file an amended return, because "[t]he IRS recently has

been taking the very aggressive position that tax opinions do not necessarily provide penalty

protection on the basis that the taxpayer did not reasonably rely in good faith on the opinion. . .

.While the imposition of penalties may or may not be ultimately sustained, the IRS is likely to

aggressively fight the removal of these penalties. For this reason, we recommend the need to file

an amended return." Id.

On April 25, 2005, the IRS issued a summons to Enterprise relating to the

Malones' investment in CTF. (HVB-Katten Compl. ¶180; Enterprise Compl. ¶71) On June 20,

2005, the IRS issued a summons to HVB relating to any loans or extensions of credit made

4

between January 1, 2001 and December 31, 2004, the proceeds of which were extended to the Malones, Belmar Trust or Belmar Trading. (HVB-Katten Compl. ¶181; Enterprise Compl. ¶72) As a result of an IRS audit, Malone claims to have paid a deficiency of $3,649,066.00, a penalty of $364,907.00 and additional interest in the amount of $388,785.00. (HVB-Katten Compl. ¶182; Enterprise Compl. ¶73)

In August 2005, Domenick DeGiorgio, co-head of HVB's Financial Engineering Group, pleaded guilty to criminal charges arising out of his involvement in HVB's use and promotion of tax shelters. (HVB-Katten Compl. Ex. B) In February 2006, HVB entered into a deferred prosecution agreement with the Government relating to its participation in fraudulent tax shelters. (Id.) On May 23, 2007, the IRS announced that it had reached a settlement with Sidley Austin concerning "the firm's promotion of abusive tax shelters and . . . failure to comply with tax shelter registration requirements." "Sidley Austin LLP Pays IRS $39.4 Million Penalty," IR-2007-103 (May 23, 2007).

On September 7, 2007, the Malones filed a lawsuit in Washington state court against several firms involved in the CTF transaction, including the HVB entities named in the instant action and Enterprise. See Pltf. Enterprise Br. 19; Malone v. Clark Nuber, P.S., No. C07-2046 (RSL), 2008 WL 2545069 (W.D. Wash. June 23, 2008). The case was subsequently removed to federal court and was assigned to Judge Robert Lasnik in the Western District of Washington. Malone, 2008 WL 2545069, at *3.

On June 23, 2008, Judge Lasnik dismissed the claims against the HVB entities for improper venue, and also dismissed a number of claims against Enterprise, including the federal claims that had provided the basis for the court's exercise of personal jurisdiction over Enterprise. Id. at * 3, 5-14; Malone v. Clark Nuber, P.S., No. C07-2046 (RSL), 2009 WL

5

481285, at *1 (W.D. Wash. Feb. 23, 2009). The court then gave the Malones an opportunity to

"establish an independent basis for asserting personal jurisdiction over the Enterprise

defendants" in an amended complaint. Malone v. Clark Nuber, P.S., No. C07-2046 (RSL), 2008

WL 4279502, at *2 (W.D. Wash. Sept. 12, 2008). On February 23, 2009, after the Malones had

filed a second and third amended complaint, Judge Lasnik dismissed the claims against

Enterprise for lack of personal jurisdiction. Malone, 2009 WL 481285.

   Plaintiffs filed suit against HVB and Katten in the Southern District of New York

on August 15, 2008, and asserted three claims for relief under New York law against both HVB

and Katten: fraud and aiding and abetting fraud (Count 1) (HVB-Katten Compl. ¶¶187-209);

breach of fiduciary duty and aiding and abetting breach of fiduciary duty (Count 2) (Id. ¶¶210-

21); and conspiracy (Count 4) (Id. ¶¶234-45). The Malones also asserted a breach of contract

claim against HVB. (Count 3) (Id. ¶¶222-33)

   In their proposed second amended complaint, the Malones assert six causes of

action against both HVB and Katten: fraud and conspiracy to commit fraud (Proposed Counts 1

and 7) (HVB-Katten Proposed SAC ¶¶184-203; 244-300); aiding and abetting fraud (Proposed

Counts 2 and 8) (Id. ¶¶204-08; 301-06); fraudulent concealment (Proposed Counts 3 and 9) (Id.

¶¶209-18; 307-11); breach of contract (Proposed Counts 4 and 12) (Id. ¶¶219-236; 331-37);

breach of the duty of good faith and fair dealing (Proposed Counts 5 and 13) (Id. ¶¶237-39; 338-

41); and aiding and abetting a breach of fiduciary duty (Proposed Counts 6 and 11) (Id. ¶240-43;

328-30). The Malones also allege a breach of fiduciary duty claim against Katten. (Proposed

Count 10) (Id. ¶¶312-27)

   Plaintiffs' complaint against Enterprise was filed April 10, 2009, and asserts

seven claims for relief under New York law including fraud and conspiracy to commit fraud

6

(Count 1) (Enterprise Compl. ¶¶ 75-98); aiding and abetting fraud (Count 2) (Id. ¶¶ 99-102); fraudulent concealment (Count 3) (Id. ¶¶ 103-12); breach of contract (Count 4) (Id. ¶¶ 113-31); breach of fiduciary duty (Count 5) (Id. ¶¶ 132-54); aiding and abetting a breach of fiduciary duty (Count 6) (Id. ¶¶ 155-61); and breach of the duty of good faith and fair dealing (Count 7) (Id. ¶¶ 162-65).

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

"When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' . . . complaint, . . . to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

Defendants have moved to dismiss on several grounds. All defendants argue that Plaintiffs' claims are time-barred. In addition, HVB and Katten contend that the Malones have failed to state a claim as to any of their causes of action, and Enterprise contends that the action

filed against it must be dismissed for lack of personal jurisdiction. This Court concludes that all of Plaintiffs' claims – including the claims that the Malones set forth in their proposed second amended complaint against HVB and Katten – are time-barred, and that accordingly both of the instant actions must be dismissed. Because Plaintiffs' claims are time-barred, the Court does not reach Defendants' arguments regarding sufficiency of the pleadings and personal jurisdiction.

## I.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs' claims arise from conduct that took place more than eight years ago, outside the applicable statutes of limitations. Moreover, none of the tolling provisions cited by Plaintiffs are applicable to their claims. Accordingly, Plaintiffs' claims must be dismissed as time-barred.

### A.    The Applicable Statutes of Limitations

Under New York law, the statute of limitations for "an action based upon fraud" is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . could with reasonable diligence have discovered it." CPLR § 213(8) (2009); see also Guilbert v. Gardner, 480 F.3d 140, 147 (2d Cir. 2007). This statute of limitations governs the Malones' claims for fraud, conspiracy to commit fraud, aiding and abetting fraud and fraudulent concealment. See Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 459 (S.D.N.Y. 2009) (applying C.P.L.R. § 213 to claims for fraud and aiding and abetting fraud); Meridien Int'l Bank v. Liberia, 23 F. Supp. 2d 439, 449-50 (S.D.N.Y. 1998) (applying the fraud statute of limitations to a "civil conspiracy claim sound[ing] in fraud."); Riis v. Manufacturers Hanover Trust Co., 632 F. Supp. 1098, 1102-06 (S.D.N.Y. 1986) (applying fraud statute of limitations to fraudulent concealment claim).

The statute of limitations for breach of contract claims is six years. CPLR § 213(2) (2009). "The claim for breach of the covenant of good faith and fair dealing is grounded

8

in contract and likewise has a limitations period of six [] years." Resnick v. Resnick, 722 F.
Supp. 27, 38 (S.D.N.Y. 1989).

The statute of limitations for breach of fiduciary duty and for aiding and abetting
breach of fiduciary duty "'depends on the substantive remedy which the plaintiff seeks.'"
Ciccone v. Hersh, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008) (quoting Independent Order of
Foresters v. Donald, Lufkin & Jenrette, Inc., 157 F.3d 933, 942 (2d Cir. 1998)). "Where a
plaintiff alleging breach of fiduciary duty 'seeks only money damages, courts have viewed such
actions as alleging injury to property, to which a three-year statute of limitations applies.'"
Ciccone, 530 F. Supp. 2d at 579 (quoting Kaufman v. Cohen, 307 A.D.2d 113, 118 (1st Dep't
2003)). Where the alleged "breach of fiduciary duty involves allegations of actual fraud,
[however,] the statute of limitations is six years regardless of the remedy sought." Scantek Med.,
Inc. v. Sabella, 583 F. Supp. 2d 477, 491 (S.D.N.Y. 2008); Pro Bono Invs., Inc. v. Gerry, No. 03
Civ. 4347 (JGK), 2005 U.S. Dist. LEXIS 22348, 2005 WL 2429787, at * 14 (S.D.N.Y. Sept. 30,
2005); Kaufman, 307 A.D.2d at 119.

Here, Plaintiffs' claims for breach of fiduciary duty depend on the allegedly
fraudulent nature of the CTF transaction and the alleged misrepresentations made to them by
HVB, Katten, and Enterprise. See, e.g., Enterprise Compl. ¶41; HVB-Katten Compl. ¶62.
Accordingly, the six-year fraud statute of limitations is applicable. See Scantek, 583 F. Supp. 2d
at 491.

**B.    Plaintiffs' Claims Accrued in December 2001**

The Malones' causes of action accrued in or before December 2001, when the
alleged misrepresentations or omissions took place. By December 3, 2001, the Malones had
executed the CTF transactional documents and entered into the agreements with HVB and

9

Enterprise upon which their claims are based. (HVB-Katten Compl. ¶¶ 65, 105; Enterprise Compl. ¶¶ 42, 53) Plaintiffs allege that HVB and Enterprise had by that time "formed an agreement" to misrepresent the nature of CTF to investors, despite their awareness "that the investment program lacked economic substance" and that "the representations about the economic substance of the loan . . . were false." (Enterprise Compl. ¶41) The Malones further allege that by December 2001 Katten had already "played a significant role in the design of CTF, including, in particular, the fraudulent loan. . . ." (HVB-Katten Compl. ¶ 62)

          Plaintiffs do not contest that their causes of action accrued in December 2001 except as to their contract claims against Enterprise. See Pltf. Enterprise Br. 19; Pltf. HVB Br. 3-7; Pltf. Katten Br. 19-25. As to the contract causes of action, Plaintiffs contend that they did not accrue until 2006, when Enterprise's five-year term as trustee ended. (Pltf. Enterprise Br. 21-22) This argument fails. "In New York, a breach of contract cause of action accrues at the time of the breach" and the statute of limitations "runs from the time of the breach though no damage occurs until later." Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 402 (1993) (citations omitted). Indeed, the Enterprise Complaint alleges that Enterprise "violated their fiduciary duty, and as a result violated their contract, by failing to disclose to Plaintiff Malone that the 'loan' that Enterprise Trust [was] 'managing' was in fact a sham loan. As a direct and proximate result of Enterprise Trust failing to fulfill its contractual fiduciary duty, Plaintiff Malone was injured." (Enterprise Compl. ¶ 120) This alleged failure to disclose occurred when the contract was signed in 2001 when – according to the Enterprise Complaint – Enterprise already knew that "the investment program lacked economic substance" and "that the representations about the economic substance of the loan . . . were false." (Enterprise Compl. ¶ 41) The other injuries the Malones allege – for example, the payment of loan fees for the "sham

10

loan" – result from the 2001 breach.  See Enterprise Compl. ¶ 130.  In sum, Plaintiffs' contract

claims against Enterprise – like all of their other claims – accrued in December 2001.

Because all of Plaintiffs' claims accrued in December 2001 and are subject to a

six-year statute of limitations, the limitations period expired in December 2007.  The lawsuits at

issue here were filed in August 2008 and April 2009 and are therefore untimely unless a tolling

provision or the fraud discovery rule of CPLR § 213(8) is applicable.[4]

### C.    The Applicable Statutes of Limitations Were Not Tolled

#### 1.    The Statutory Tolling Provisions Cited by Plaintiffs Are Not Applicable

Plaintiffs acknowledge that the instant cases were filed more than six years after

their causes of action accrued but argue – as to their claims against HVB and Enterprise – that

the September 7, 2007 filing of their Washington state court lawsuit tolled the statutes of

limitations.[5]  See Pltf. Enterprise Br. 19; Pltf. HVB Br. 4.  Plaintiffs' tolling argument relies on

both New York and federal statutes.  (Pltf. Enterprise Br. 23-25; Pltf. HVB Br. 2-3)

First, the Malones cite CPLR § 205(a),[6] which states:

> [i]f an action is timely commenced and is terminated in any other
> manner than by a voluntary discontinuance, a failure to obtain
> personal jurisdiction over the defendant, a dismissal of the
> complaint for neglect to prosecute the action, or a final judgment
> upon the merits, the plaintiff, or, if the plaintiff dies, and the cause

---

[4]  As noted above, CPLR § 213(8) provides that fraud claims are subject to a statute of limitations of "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . could with reasonable diligence have discovered it."  CPLR § 213(8) (2009).

[5]  The Washington action did not name Katten as a defendant.  Accordingly, Plaintiffs rely on the discovery prong of the fraud statute of limitations and on principles of equitable tolling in arguing that their claims against Katten are timely.  (Pltf. Katten Br. 18-24)

[6]  The Malones acknowledge that CPLR § 205(a) is applicable only to their claims against HVB.  Plaintiffs' claims against Enterprise in the Washington lawsuit were dismissed for lack of personal jurisdiction, and Plaintiffs "concede that the language of New York CPLR § 205(a) does not allow the tolling of the statute when the case has been dismissed based upon a failure to obtain personal jurisdiction over the defendant."  (Pltf. Enterprise Br. 24)

> of action survives, his or her executor or administrator, may
> commence a new action upon the same transaction or occurrence
> or series of transactions or occurrences within six months after the
> termination provided that the new action would have been timely
> commenced at the time of commencement of the prior action and
> that service upon defendant is effected within such six-month
> period.

This provision, however, tolls limitations periods only for cases initially filed in New York

courts. Talarico v. Thomas Crimmins Contr. Co., 1995 U.S. Dist. LEXIS 10053, 1995 WL

422034, at *2 (S.D.N.Y. July 14, 1995) (holding that a prior action filed in New Jersey did not

toll the statute of limitations because "CPLR § 205 is not available when the predicate action is

commenced in a sister state"); Baker v. Commercial Travelers Mut. Acci. Asso., 3 A.D.2d 265,

266 (4th Dep't 1957) (holding that "an action brought in either a State or Federal court in a State

other than New York does not save the cause of action by permitting a new action in this State"

under the predecessor rule to CPLR § 205(a)). Accordingly, Plaintiffs' Washington lawsuit did

not toll the statute of limitations under CPLR § 205(a). See Talarico, 1995 WL 422034, at *2;

Baker, 3 A.D.2d at 266.

Plaintiffs also argue that the tolling provision of 28 U.S.C. § 1367 – which

governs the exercise of a federal court's supplemental jurisdiction – tolled the statutes of

limitations governing their claims. (Pltf. HVB Br. 2-3; Pltf. Enterprise Br. 23-25)

Section 1367(a) defines a federal court's supplemental jurisdiction as follows:

> [I]n any civil action of which the district courts have original
> jurisdiction, the district courts shall have supplemental jurisdiction
> over all other claims that are so related to claims in the action
> within such original jurisdiction that they form part of the same
> case or controversy under Article III of the United States
> Constitution.

28 U.S.C. § 1367(a).

Under § 1367(c), however, district courts

12

> may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Section 1367(d) tolls applicable statutes of limitations for supplemental state law

claims while they are pending in federal court and for 30 days after they are dismissed:

> [t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d).

Plaintiffs contend that the instant actions against HVB and Enterprise are timely

because they were filed within 30 days of the denial of their motions for reconsideration of the

dismissal of the Washington action.[7]  The Malones' reliance on § 1367(d) is misplaced, however,

---

[7] Judge Lasnik of the Western District of Washington court dismissed Plaintiffs' claims against HVB on June 23, 2008, Malone, 2008 WL 2545069, at *3, and denied their motion for reconsideration on July 16, 2008.  (Pltf. HVB Br. 3)  The Malones filed the instant action against HVB on August 15, 2008.  As to Enterprise, on June 23, 2008, Judge Lasnik dismissed the federal claims which had provided the basis for the court's exercise of personal jurisdiction over Enterprise.  Malone, 2008 WL 2545069, at * 5-14; see also Compl. ¶ 29.  However, the court did not address the personal jurisdiction issue at that time.  Malone, 2008 WL 4279502, at *2.  On February 23, 2009, Judge Lasnik dismissed the remaining claims against Enterprise for lack of personal jurisdiction.  Malone v. Clark Nuber, P.S., 2009 WL 481285 (W.D. Wash. Feb. 23, 2009).  Plaintiffs' motion for reconsideration of this decision was denied on March 11, 2009

because this provision only applies to supplemental state law claims dismissed in federal court

and then re-filed in state court. As the Second Circuit stated in <u>Seabrook v. Jacobson</u>, 153 F.3d

70, 72 (2d Cir. 1998), "Section 1367(d) ensures that the plaintiff whose supplemental state claim

is dismissed has at least thirty days after dismissal to refile in <u>state court</u>." (emphasis added)[8]

Other courts have likewise held that § 1367(d) is applicable only to actions re-filed in state

courts. <u>See</u>, <u>e.g.</u>, <u>Jarmuth v. Frinzi</u>, No. 1:04CV63 (Keeley), 2006 U.S. Dist. LEXIS 96718,

2006 WL 4730263, at *11 (N.D.W.Va. July 25, 2006) ("[T]he tolling provision of 28 U.S.C.

§ 1367(d) applies to supplemental state law claims that are refiled in state court subsequent to

dismissal, not to a new case filed in another federal court."); <u>Parrish v. HBO & Co.</u>, 85 F. Supp.

2d 792, 795-96 (S.D. Ohio 1999) ("The Court finds no evidence that § 1367 was intended to act

as a savings statute, allowing a plaintiff to refile in *federal court*. Thus, the Court concludes that

§ 1367(d) operates to guarantee that plaintiffs do not lose the ability to refile their claims in *state*

*court*. . . following the federal court's failure to exercise supplemental jurisdiction.") (emphasis

in original); 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 106.05 (3d ed. 2009)

("Subsection (d) of the supplemental jurisdiction statute enacts a salutary tolling provision to

---

(Compl. ¶ 29), and they filed the instant action against Enterprise on April 10, 2009. Because
§ 1367(d) did not toll the applicable statutes of limitations, this Court does not reach the issue of
whether the 30-day period set forth in § 1367(d) runs from the dismissal of the complaint or from
the denial of a motion for reconsideration.

[8] In discussing the constitutionality of § 1367(d), the Supreme Court has likewise recognized
that this provision addresses supplemental state law claims re-filed in state court:

> Although the Constitution does not expressly empower Congress
> to toll limitations periods for <u>state-law claims brought in state</u>
> <u>court</u>, it does give Congress the authority "to make all Laws which
> shall be necessary and proper for carrying into Execution
> [Congress's Article I, § 8] Powers and all other Powers vested by
> this Constitution in the Government of the United States."

<u>Jinks v. Richland County, South Carolina</u>, 538 U.S. 456, 461 (2003) (emphasis added).

save supplemental claims that have been dismissed in federal court for assertion in state court.").[9]

Here, the Malones are seeking to litigate claims dismissed by a federal court in the Western District of Washington. Because they have re-filed those claims in another federal court, the tolling provision set forth in § 1367(d) is not applicable.[10]

### 2.  Collateral Estoppel Bars Plaintiffs' Equitable Tolling Argument

Plaintiffs also contend that the applicable statutes of limitations were equitably tolled because of the defendants' fraudulent concealment of their wrongdoing.[11] "Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that:  (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period;' and (3) plaintiff exercise[d] due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." Corcoran

---

[9]  This interpretation of § 1367(d) is supported by its legislative history.  The House Report concerning § 1367 states that "the purpose [of the statute's tolling provision] is to prevent the loss of claims to statutes of limitations where state law might fail to toll the running of the period of limitations while a supplemental claim was pending in federal court." H.R. Rep. No. 734, 101st Cong., 2d Sess. (1990); see also 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 106.05 (3d ed. 2009).

[10]  Section 1367(d) is likewise inapplicable because Plaintiffs' state law claims against HVB and Enterprise were dismissed for improper venue and lack of personal jurisdiction and not for any of the reasons listed in § 1367(c). Malone, 2008 WL 2545069, at *3; Malone, 2009 WL 481285, at *1. The tolling provision set forth in § 1367(d) does not preserve claims dismissed for these reasons. See, e.g., Zychek v. Kimball Int'l Mktg. Inc., CV06-64-N-EJL, 2006 U.S. Dist. LEXIS 26953, 2006 WL 1075452, at *3 (D. Idaho April 21, 2006) ("The dismissal of all claims (federal and state)...was not pursuant to 28 U.S.C. § 1367. Therefore, the Plaintiff cannot rely on 28 U.S.C. § 1367(d) to toll the statute of limitations."); Parrish, 85 F. Supp. 2d at 796-97 ("[T]he Court concludes that, for § 1367(d) to be applicable, the supplemental claim brought pursuant to § 1367(a) must have been dismissed by the court pursuant to § 1367(c).").

[11]  Plaintiffs have pled fraudulent concealment claims against Enterprise (Enterprise Compl. ¶¶ 103-12) and seek to add such claims against HVB and Katten in their proposed second amended complaint.  (HVB-Katten Proposed SAC ¶¶209-18; 307-11)

v. New York Power Auth., 202 F.3d 530, 543 (2d Cir. 1999) (quoting Lanza v. Merrill Lynch & Co., 154 F.3d 56, 60 (2d Cir. 1998)).

In the fraudulent misrepresentation or concealment context, "the equitable estoppel doctrine is not available to 'a plaintiff who possesses timely knowledge sufficient to place him or her under a duty to make inquiry and ascertain all the relevant facts prior to the expiration of the applicable Statute of Limitations.'" Porwick v. Fortis Benefits Ins. Co., 99 Civ. 10122 (GBD), 2004 U.S. Dist. LEXIS 24432, 2004 WL 2793186, at *6 (Dec. 6, 2004 S.D.N.Y.) (quoting Gleason v. Spota, 194 A.D.2d 764 (2nd Dep't 1993); see also Corcoran, 202 F.3d at 543.

Here, the Malones allege that Katten, HVB and Enterprise concealed the fraudulent scheme behind CTF and the fraudulent nature of the "sham loan" underlying the CTF transaction. Plaintiffs also argue that the question of when they had notice of the fraud is a question of fact "not amenable to determination on the pleadings." (Pltf. HVB Br. 23)

The question of when the Malones were on notice of the allegedly fraudulent nature of the CTF transaction and the "sham loan" underlying it, however, was already litigated and decided in the Western District of Washington action. That court concluded that Plaintiffs were on notice of the alleged fraud and the sham nature of the loan by the end of 2003. The Malones are collaterally estopped from asserting otherwise here.

"The 'fundamental notion' of the doctrine of collateral estoppel, or issue preclusion, 'is that an issue of law or fact actually litigated and decided by a court of competent jurisdiction in a prior action may not be relitigated in a subsequent suit between the same parties or their privies.'" Ali v. Mukasey, 529 F.3d 478, 489 (2d Cir. 2008) (quoting United States v. Alcan Aluminum Corp., 990 F.2d 711, 718-19 (2d Cir. 1993)). Collateral estoppel applies when

"(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was

'actually litigated and actually decided,' (3) there was 'a full and fair opportunity for litigation in

the prior proceeding,' and (4) the issues previously litigated were 'necessary to support a valid

and final judgment on the merits.'" Ali, 529 F.3d at 489 (quoting Gelb v. Royal Globe Ins. Co.,

798 F.2d 38, 44 (2d Cir. 1986)).

   In his June 23, 2008 opinion, Judge Lasnik addressed the issue of when the

Malones were put on notice of the facts giving rise to the fraud claims they allege:

> Plaintiffs admit that they "were first alerted to the possibility of
> Defendants['] misconduct during an audit of the Malone's [sic]
> 2001 tax return." The same paragraph goes on to state that in April
> and June 2005, the IRS issued summonses to two of the
> defendants, both financial institutions, regarding the Malones.
> However, plaintiffs actually had notice even earlier. In August
> 2003, the IRS issued a notice entitled "Common Trust Fund
> Straddle Tax Shelter" (the "IRS notice") which stated that "the
> claimed tax benefits purportedly generated by these transactions
> are not allowable for federal income tax purposes." That notice
> specifically disallowed the CTF shelter. Malone was also
> personally notified of the issue. By letter dated December 22,
> 2003, CTF President Michael Schwartz advised Malone to file an
> amended tax return and to retain an attorney. The CTF letter
> explained that the IRS notice stated "that the IRS intended to
> challenge the tax benefits associated with" CTF, the transaction
> plaintiffs "entered into in 2002." The CTF letter further stated that
> some of Schwartz's clients were currently under IRS investigation.
> "This has led me to conclude that the IRS will shortly begin an
> investigation of my company as well, ultimately requiring me to
> provide them with a list of all clients that have entered into listed
> transactions. As such it is almost certain that you will [be] audited
> at some time in 2004." In addition, contrary to Clark Nuber's
> assertion that the Sidley Austin opinion letter would preclude
> penalties, the CTF letter explicitly stated, "The IRS recently has
> been taking the very aggressive position that tax opinions do not
> necessarily provide penalty protection on the basis that the
> taxpayer did not reasonably rely in good faith on the opinion."
> Malone subsequently retained an attorney.
>
> The CTF letter and the IRS notice put plaintiffs on notice of nearly
> all of the facts that defendants allegedly concealed from them and

17

> that give rise to their claims, including the fact that CTF lacked
> economic substance, that the IRS would not allow the deductions,
> that the IRS would audit plaintiffs, and that the Sidley Austin letter
> would not necessarily prevent the imposition of penalties.

Malone, 2008 WL 2545069, at *8.

Judge Lasnik went on to note that the Malones had raised an additional theory of

liability based on the alleged "sham loan" underlying CTF, which they claimed they had not

discovered until March 2007:

> Plaintiffs allege that they did not learn that the loan was a sham
> until March 2007. Defendants have not offered any evidence at
> this point to counter that assertion. Nor can the Court conclude as
> a matter of law that notice that the IRS was disallowing the tax
> deductions constituted notice that the loan was a sham. It appears
> that any claims based on the alleged sham nature of the loan would
> not be time barred. Accordingly, plaintiffs will be permitted to
> amend their complaint to clarify that theory.

Malone, 2008 WL 2545069, at *9.

Judge Lasnik returned to the fraud discovery issue in a February 2009 order. After

reviewing the Malones' third amended complaint, in which they attempted to plead fraud based

on the "sham loan" theory, Judge Lasnik concluded that this theory of liability was

> simply a restatement of [the Malones'] claim that CTF lacked
> economic substance. The sham nature of the loan was one of the
> reasons why CTF lacked economic substance. The third amended
> complaint shows that the loan was not a separate transaction, but
> was a necessary part of the CTF transaction. . . . As plaintiffs' own
> allegations show, the sham nature of the loan caused it to lack
> economic substance. Therefore, because plaintiffs knew by the
> end of 2003 that CTF lacked economic substance, [they] could
> have discovered by that time that the loan was a sham.

Malone, 2009 WL 481288, at *3.

All four elements necessary for the application of collateral estoppel are present

here. First, the proceedings here and those in Washington present an identical issue: when the

Malones were on notice that CTF was fraudulent and that the loan underlying the CTF transaction was a "sham."

Second, this issue was litigated and decided by Judge Lasnik. With respect to knowledge that CTF was fraudulent and that the loan underlying it was a sham, Judge Lasnik concluded that Plaintiffs were on notice of this by the end of 2003. Malone, 2008 WL 2545069, at *8; Malone, 2009 WL 481288, at *3.

Third, the Malones had a "full and fair opportunity" to litigate this issue in the action before Judge Lasnik. The Second Circuit has held that a "full and fair opportunity" to litigate means that the plaintiff was "fully able to raise the same factual or legal issues" in the prior litigation. Lafleur v. Whitman, 300 F.3d 256, 274 (2d Cir. 2002). A litigant may be barred from re-litigating an issue even if the prior litigation was against a different party. Id.; Hoppe v. G.D. Searle & Co., 779 F. Supp. 1425, 1427 (S.D.N.Y. 1991); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979). Here – as to the "sham loan" theory of liability – Plaintiffs were litigating the timeliness of their claims in the Washington action against Seattle law firm Ahrens & DeAngeli, rather than against HVB, Katten, or Enterprise. Plaintiffs, however, had a full and fair opportunity to present their arguments that they did not discover the sham nature of the underlying loan until 2007. Indeed, the Malones were permitted to amend their complaint three times in the Washington action and were specifically directed to clarify their "sham loan" theory. See Malone, 2009 WL 481288, at *1; Malone, 2008 WL 2545069, at *9.

Finally, the issue of when the Malones were on notice of the fraudulent nature of CTF and the sham nature of the loan was necessary to support Judge Lasnick's judgment dismissing all but one of the Malones' claims against the Ahrens & DeAngeli defendants as time-barred. Malone, 2009 WL 481288, at *4; Malone, 2008 WL 2545069, at *8-9.

In sum, the Malones are collaterally estopped from asserting that they discovered the fraudulent conduct at issue – including the "sham" nature of the loan – after the end of 2003. Because the Malones were on notice of the alleged fraudulent misconduct long before the expiration of the applicable statutes of limitations in December 2007, they may not claim the benefits of equitable tolling under the doctrine of fraudulent concealment. See Porwick, 2004 WL 2793186, at *6; see also Corcoran, 202 F.3d at 543.

### D.    The Fraud Discovery Rule Does Not Render Plaintiffs' Claims Timely

The statute of limitations for fraud claims is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . could with reasonable diligence have discovered it." CPLR § 213(8). The Malones contend that even if their fraud claims are not timely under the first prong of this provision, they are timely under the discovery prong of Section 213(8).

"The test as to when fraud should with reasonable diligence have been discovered is an objective one." Armstrong v. McAlpin, 699 F.2d 79, 88 (2d Cir. 1983). "'Where the circumstances are such as to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.'" Guilbert v. Gardner, 480 F.3d 140, 147 (2d Cir. 2007) (quoting Armstrong, 699 F.2d at 88).

The Malones claim that they did not discover that the HVB loan was a "sham" until March 2007. (Pltf. HVB Br. 4; Pltf. Enterprise Br. 20) As discussed above, having litigated and lost on this issue before Judge Lasnik, Plaintiffs cannot raise this claim anew. They

20

are collaterally estopped from asserting that the discovery date concerning the allegedly

fraudulent nature of CTF and the "sham loan" underlying it is any later than the end of 2003.[12]

The Malones filed the instant action against HVB and Katten on August 15, 2008,

and the action against Enterprise on April 10, 2009. Because both suits were filed more than two

years after December 2003, the Malones' fraud claims are time-barred even under the discovery

prong of the fraud statute of limitations.[13]

## II.    PLAINTIFFS' CROSS MOTION TO FILE A SECOND AMENDED COMPLAINT AGAINST HVB AND KATTEN IS DENIED AS FUTILE.

The Malones have submitted a proposed second amended complaint that they

seek to file against HVB and Katten. "Leave to amend should be freely granted, but the district

court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith,

undue delay, or undue prejudice to the opposing party." Jin v. Metropolitan Life Ins. Co., 310

---

[12]   Even if Plaintiffs were not collaterally estopped from re-litigating this issue, and even if the
Court accepted their argument that they were not aware of the "sham" nature of the loan until
March 2007, Plaintiffs' action against Enterprise was not commenced until April 2009 – outside
the two year discovery period set forth in CPLR § 213(8).

[13]   Plaintiffs also contend that Judge Lasnik stated in a June 2008 opinion that "it appears that
any claims based on the alleged sham nature of the loan would not be time barred," and that this
finding constitutes "law of the case." (Pltf. HVB Br. 4-5; Pltf. Enterprise Br. 19-20) Plaintiffs
have both grossly distorted Judge Lasnik's rulings on this issue and have misapplied the "law of
the case" doctrine. That doctrine "dictates that 'a decision on an issue of law made at one stage
of a case becomes binding precedent to be followed in subsequent stages of the same litigation.'"
Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 218 (2d Cir. 2002) (quoting In re
Korean Air Lines Disaster, 798 F. Supp. 755, 759 (E.D.N.Y. 1992)). As an initial matter, the
case before Judge Lasnik was brought under Washington law, not New York law. Secondly, the
cases before this Court are obviously not "subsequent stages" of the litigation before Judge
Lasnik. Finally, as Plaintiffs know full well, Judge Lasnik's June 2008 comment that the "sham
loan" claim did not appear to be time-barred was not a final ruling. Judge Lasnik instructed the
Malones to elaborate upon the "sham loan" theory of liability, because they had not "stress[ed
this claim] in their briefing or in the Amended Complaint." Malone, 2008 WL 2545069, at *9;
see also Malone, 2009 WL 481288, at *3 (W.D. Wash. Feb. 23, 2009).
After the Malones did so – in the context of a third amended complaint – Judge Lasnik revisited
this issue and concluded that the Malones were on inquiry notice of the "sham loan" by the end
of 2003 and that their claims under Washington law were in fact time-barred. Malone, 2009 WL
481288, at *3-4.

F.3d 84, 101 (2d Cir. 2002). "An amendment to a pleading is futile if the proposed claim could

not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." Lucente v. Int'l

Business Machines Corp., 310 F.3d 243, 258 (2d Cir. 2002) (citing Dougherty v. North

Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)). Here, Plaintiffs will not be

granted leave to amend because the claims in their proposed second amended complaint – like

those set forth in the earlier complaints – are time-barred. Accordingly, the proposed second

amended complaint could not withstand a motion to dismiss.

   In support of their motion for leave to amend, Plaintiffs repeat the arguments they

made in opposing defendants' motions to dismiss. For example, the Malones argue again that

they did not discover the sham nature of the loan underlying the CTF transaction until – at the

earliest – late December 2006. They also contend that they were not aware of Katten's role in

the alleged fraud until September 2007, when they filed their Washington complaint. (Pltf.

Katten Reply Br. 6)

   Plaintiffs, however, are bound by Judge Lasnik's determination that they were on

notice of the allegedly fraudulent nature of the sham loan and the CTF transaction in general as

of December 2003. See supra 15-20. The Malones' argument that they were not on notice of

Katten's alleged fraud in connection with the sham loan until after September 2007 is also

unavailing. In the second amended complaint, Plaintiffs have not alleged any facts suggesting

that their claims against Katten are in any way separate or distinct from the fraud claims they

alleged against the other defendants named here or in Washington. See Pltf. Katten Reply Br. 3-

6; Proposed SAC. The Malones were on inquiry notice of the alleged sham nature of the loan by

the end of 2003, see supra 15-20; Malone, 2009 WL 481288, at *3, and they have conceded that

they were aware of Katten's involvement in preparing the CTF transaction before 2003. (HVB-

Katten Compl. ¶¶ 53, 55; Proposed SAC ¶¶ 54, 56, 59)  Indeed, the proposed second amended complaint pleads that the Malones "reasonably relied" on Katten's representations, all made before 2003.  (Proposed SAC ¶ 59); see also Proposed SAC ¶¶ 54, 56.  Given that the Malones were on inquiry notice of the alleged sham nature of the loan in 2003, and have pleaded facts indicating that they were aware of Katten's involvement in the CTF transaction before 2003, there is no basis to find that the limitations period applicable to Plaintiffs' claims against Katten began to run later than their claims against HVB or Enterprise.

The Malones also claim that the proposed second amended complaint adequately pleads the elements of fraudulent concealment.  (Pltf. HVB Reply Br. 8-9; Pltf. Katten Reply Br. 8-9)  The doctrine of fraudulent concealment, however, does not toll the statutes of limitations as to the Malones' claims because they were on inquiry notice before the expiration of the limitations period.  See supra 15-20.  Because the proposed second amended complaint does not cure the time-barred nature of the Malones' claims against HVB and Katten, the proposed amendment would be futile, and accordingly the motion for leave to file the proposed second amended complaint will be denied.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss the above-captioned cases are GRANTED, and the Plaintiffs' motion for leave to file a second amended complaint against HVB and Katten is DENIED. The Clerk of the Court is directed to terminate the following motions:

> 08 Civ. 7277 – Docket No. 10, 13, 32;
> 09 Civ. 3676 – Docket No. 4.

The Clerk of the Court is further directed to close the above-captioned cases.

Dated: New York, New York
February 4, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge

24